GABRIEL A. NEWGOLD, Respondent, *v.* WOODSTOCK DEVELOPMENT
CORPORATION, Also Known as WOODSTOCK DEVELOPMENT CORP.,
Appellant.

Third Department, July 7, 1966.

*Schwartz, Weissberger, Leichter & Storch* (*Herman N. Schwartz* and *Irving Ronald Storch* of counsel), for appellant.

*Prince & Loeb* (*Merton L. Zubres, Sidney J. Loeb* and *Benjamin Goldbaum* of counsel), for respondent.

AULISI, J.  This is an appeal from an order of the Supreme Court at Special Term, Sullivan County, which denied defendant's motion for summary judgment that installments of principal and interest totaling $9,500 due under a bond and mortgage were barred by the six-year Statute of Limitations (CPLR 213, subd. 4).

This action was commenced on April 17, 1964 to foreclose a real property mortgage intended to secure a debt of $10,000. The mortgage was executed on April 28, 1953 and contained the following provisions for repayment: " the sum of *Ten Thousand ($10,000.00)* dollars * * * to be paid *Five hundred ($500.00) Dollars quarterly on the 28th days of July, October, January and April of each year, until April 28, 1958 when the entire unpaid principal balance shall become due and payable* with interest thereon to be computed from *28th day of April, 1953,* at the the rate of *five* per centum per annum, and to be paid *together with each installment of principal* according to a certain bond, bearing even date herewith ".  (Italics indicate typewritten portion.)  These provisions were incorporated by reference into the accompanying bond.  In the case of a normal installment mortgage, as each installment comes due a separate action may be brought to collect it and the Statute of Limitations begins to run on that installment at that time (*Ziegler* v. *Elliott Camp Corp.* [*Von Sebo*], 271 App. Div. 604).  If the quoted provisions create such a separate right of action on each installment of principal, recovery for any but the last installment is barred.  However, presumably as a result of the omission of the customary words " then remaining " before " unpaid ", the repayment provisions appear to state both that the principal shall become due in quarterly installments and then, if still unpaid, become due a second time on April 28, 1958.  The respondent contends that the omission of the " then remaining " was intentional and that the parties did not intend that the mortgagee would have a right of action as to any portion of the principal sum until April 28, 1958 subject to his unexercised option to accelerate to the extent of the unpaid installments.

On this motion for summary judgment, appellant has the burden of showing that the repayment provisions were not ambiguous and that no question of fact as to the intention of

the parties was presented (*Leefe v. Public Serv. Mut. Ins. Co.,* 14 A D 2d 951). The credibility of the conflicting affidavits could not be determined on the motion for summary judgment (*Di Donna v. Sachs,* 9 A D 2d 576). However unlikely respondent's interpretation of the mortgage may be, a triable issue was presented and the motion for summary judgment was properly denied.

The order should be affirmed.

GIBSON, P. J. (dissenting). The questioned clause seems to me to contain no ambiguity and hence to present no reason to resort to extrinsic proof. (*Bethlehem Steel Co. v. Turner Constr. Co.,* 2 N Y 2d 456, 460.)

The clause in issue provided for payment of $10,000 in quarter-annual installments of $500 each until April 28, 1958, on which date the 20th and final installment of $500 became due. More specifically, it was provided that the quarterly payments should continue " until April 28, 1958 when the entire unpaid principal balance shall become due and payable ". Thus, if the first 19 installments were paid when due there would " become due and payable " on April 28, 1958 the " entire unpaid principal balance " of $500; if only the first 10 of the 19 prior installments due had been paid there would " become due and payable " on April 28, 1958 an " entire unpaid principal balance " of $5,000, of which $4,500 would have been past due; or, more precisely perhaps, there would " *become* due and payable " on that date " the entire unpaid principal balance " of $500 and on that date there would *remain* due the $4,500 already past due, this last paraphrase seeming to be warranted inasmuch as there is, of course, no language in the instrument to indicate that the past due installments would ever cease to be due.

There seems no great significance in the unnecessary or redundant use of the word " entire "; none, certainly, of such weight as to permit the unprecedented and highly peculiar construction urged by respondent, and considered possible by the majority opinion, that unpaid installments would in some unexplained way cease to be due and would then " become due a second time on April 28, 1958 ". The majority opinion suggests that " the customary words ' then remaining ' " were omitted but neither the opinion nor the record supports the suggestion or conjecture of such " customary " usage by citing any evidence thereof. On the contrary, a constant payment clause which is, in pertinent part, identical with that before us is presented by one of the leading texts, as follows: " to be paid

.......... Dollars on the .... day of .........., 19...., and a like sum on the .... day of each and every month thereafter until the .... day of .........., 19...., *when the entire balance* with interest thereon *shall become* due and payable ". (Marks, Mortgages and Mortgage Foreclosure in New York, p. 743; emphasis supplied.) So, too, in *Bromfeld* v. *Bromfeld* (73 N. Y. S. 2d 194) the payment clause redundantly provided, as does the one before us, that the " *entire* balance " should " *become* due and payable " on the due date of the last installment (italics supplied).

Under respondent's interpretation there had to come a time when the first payment due on April 28, 1953 and subsequent installment payments ceased to become due; but *how* that could be, and *when* the payment would cease to be due, we are not told. If at some undisclosed time after the original due date of an installment, the payment thereof ceased to continue due, the obligee, of course, could not have sued upon it; but how could it reasonably be considered that the obligee could not have sued on any unpaid installment at any given time within six years of its due date; or that the right to sue, thus lost, would automatically be revived years later? There is no great obscurity, and certainly no magic, in the words " entire " and " become " and whether the clause is to be read " entire unpaid principal balance ", " unpaid principal balance ", or " unpaid principal balance then remaining ", the intent, meaning and effect are the same. Consequently I vote to reverse.

REYNOLDS and TAYLOR, JJ., concur with AULISI, J.; GIBSON, P. J., dissents and votes to reverse in an opinion, in which HERLIHY, J., concurs.

Order affirmed, with costs.