Matter of Spence v New York State Off. of Mental Health (2022 NY Slip Op 07482)

Matter of Spence v New York State Off. of Mental Health

2022 NY Slip Op 07482

Decided on December 29, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 29, 2022

532526
[*1]In the Matter of Wayne Spence, as President of the Public Employees Federation, AFL-CIO, et al., Appellants,
v
New York State Office of Mental Health et al., Respondents.

Calendar Date:November 18, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Ceresia and Fisher, JJ.

Edward J. Greene Jr., New York State Public Employees Federation, AFL-CIO, Albany (Kimberly A. Livingstone of counsel), for appellants.
Letitia James, Attorney General, Albany (Andrea Oser of counsel), for respondents.

Egan Jr., J.P.
Appeal from a judgment of the Supreme Court (Patrick J. McGrath, J.), entered November 4, 2020 in Albany County, which dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to, among other things, review determinations of certain respondents denying certain petitioners' requests for leave pursuant to the Families First Coronavirus Response Act.
In March 2020, Congress responded to the emerging COVID-19 pandemic by passing the Families First Coronavirus Response Act (Pub L 116-127, 134 US Stat 178 [116th Cong, 2d Sess, Mar. 18, 2020] [hereinafter FFCRA]), which, as is relevant here, temporarily required employers to provide public health emergency leave to eligible employees who were unable to work as a result of the COVID-19 related closure of their child's school or place of care (Pub L 116-127, div C, § 3102, 134 US Stat 178, 189-191, amending 29 USC § 2612 and adding 29 USC § 2620) and paid sick leave to employees who were required to quarantine due to COVID-19 or had been advised to do so by a health care provider (see Pub L 116-127, div E, § 5102 [a], 134 US Stat 178, 195-196). Petitioners Jonathan Sullivan, Michelle Meyers, Christina Hooper and Megan Rose (hereinafter collectively referred to as the individual petitioners) were employed by various state agencies in 2020 and sought public health emergency leave to care for their children, while petitioner Michelle Boechel, also a state employee, sought paid sick leave after being forced to quarantine because of a COVID-19 exposure at work. The leave requests were not granted, forcing the individual petitioners and Boechel to use their accrued leave or take other forms of leave.
Thereafter, in July 2020, the individual petitioners, Boechel and petitioner Wayne Spence — acting in his capacity as president of the New York State Public Employees Federation, AFL-CIO (hereinafter PEF), the union representing their bargaining unit — commenced this combined CPLR article 78 proceeding and declaratory judgment action seeking annulment of the determinations denying the requests of the individual petitioners and Boechel and a declaration that respondents' general treatment of such requests was not only arbitrary and capricious, but deprived members of the bargaining unit the equal protection of the laws. Following joinder of issue, Supreme Court dismissed the petition/complaint in its entirety. Petitioners appeal.[FN1]
Initially, petitioners conceded at oral argument that the appeal is moot with regard to Boechel, as she was retroactively granted the paid quarantine leave that she had sought (see Matter of Spence v New York State Off. of Mental Health, AD3d [3d Dept 2022] [decided herewith]; Matter of Brown v City of Schenectady, 209 AD3d 128, 131-132 [3d Dept 2022]). Further, for the reasons articulated in Matter of Spence v New York State Office of Mental Health, we agree with respondents that Spence lacked organizational [*2]standing to seek any relief for nonparty members of the bargaining unit. We therefore turn to the issue that remains live and is properly before us, namely, whether the denials of the individual petitioners' requests for public health emergency leave " had a rational basis and [were] not arbitrary and capricious" (Matter of Smith v City of Norwich, 205 AD3d 140, 142 [3d Dept 2022]; see Matter of Wooley v New York State Dept. of Correctional Servs., 15 NY3d 275, 280 [2010]; Matter of Spence v New York State Dept. of Civ. Serv., 196 AD3d 934, 936 [3d Dept 2021]). We stress in doing so that, "unless the determinations are shown to be wholly arbitrary and capricious or without a rational basis, they will not be disturbed 'even if there are legitimate grounds for a difference of opinion'" (Matter of Spence v New York State Dept. of Civ. Serv., 196 AD3d at 936, quoting Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO v State of N.Y. Unified Ct. Sys., 35 AD3d 1008, 1009 [3d Dept 2006]). As we are satisfied that a rational basis does support those determinations, we affirm.
A component of FFCRA, the Emergency Family and Medical Leave Expansion Act, made public health emergency leave available to employees through December 31, 2020 (Pub L 116-127, div C, § 3101 et seq., 134 US Stat 178, 189-192 [hereinafter EFMLA]). EFMLA permitted an employer, however, to exclude "an employee who is a health care provider or emergency responder" from its provisions (Pub L 116-127, div C, § 3105, 134 US Stat 178, 192). On April 4, 2020, respondent State Department of Civil Service (hereinafter DCS) issued a "policy bulletin provid[ing] information and implementation guidance" to state agencies that, among other things, "provide[d] a brief overview of" EFMLA and "summarize[d] [DCS'] current understanding of" the enactment. DCS noted the exclusion for health care providers and emergency responders, and referred agencies to the federal Department of Labor's guidance as to who fell within those categories. It also advised agencies to "consult with [respondent Governor's Office of Employee Relations] and receive prior approval from" the relevant Deputy Secretary to the Governor if they were interested in relying upon the exclusion, as well as that health care providers or emergency responders "should continue to report to their agencies."
On April 6, 2020, the federal Department of Labor published temporary regulations that took effect as of April 2, 2020 and that defined the terms health care provider and emergency responder for purposes of the EFMLA exclusion (see 85 Fed Reg 19326-01 [2020], codified at 29 CFR Part 826). A health care provider was defined as "anyone employed at any doctor's office, hospital, health care center, clinic, post-secondary educational institution offering health care instruction, medical school, local health department or agency, nursing facility, retirement facility, nursing home, home health care provider, any facility that [*3]performs laboratory or medical testing, pharmacy, or any similar institution, [e]mployer, or entity," including "any permanent or temporary institution, facility, location or site where medical services are provided that are similar to such institutions" (29 CFR former 826.30 [c] [1] [i]). Emergency responders, in turn, were defined as "anyone necessary for the provision of transport, care, healthcare, comfort and nutrition of . . . patients, or others needed for the response to COVID-19" (29 CFR former 826.30 [c] [2] [i]). The term included not only medical workers, but also military and law enforcement officials, first responders, "correctional institution personnel, . . . child welfare workers and service providers, public works personnel, and persons with skills or training in operating specialized equipment or other skills needed to provide aid in a declared emergency," as well as all "individuals who work for such facilities employing these individuals and whose work is necessary to maintain the operation of the facility" (29 CFR former 826.30 [c] [2] [i]).
The foregoing guidance documents and regulations governed requests for public health emergency leave at the time the individual petitioners sought it. Respondents came forward with the affidavits of various officials describing, among other things, how the agencies employing the individual petitioners consulted with the Governor's Office of Employee Relations regarding the exclusion for health care providers and emergency responders, how they elected to utilize the exclusion, and how the individual petitioners' inquiries about public health emergency leave were handled. Respondents also came forward with documentary evidence showing how the individual petitioners were either advised that their agency had not yet determined whether they were excluded from eligibility for public health emergency leave or that they were excluded from eligibility because they were health care providers, emergency responders or both.
Specifically, respondent Office of Mental Health denied the April 2020 leave request of petitioner Jonathan Sullivan because he was working as a teacher at a psychiatric facility and was continuing to instruct patients at the facility and assessing their progress during the COVID-19 pandemic, rendering him necessary for the continued operation of the facility and a health care provider. Petitioner Michelle Meyers was advised in May 2020 that respondent Office for People with Developmental Disabilities — an agency that provides health care services to individuals with developmental disabilities and where she worked as a habitation specialist — was still assessing whether its employees were health care providers but that she was eligible for other leave options. Petitioner Christina Hooper worked for respondent Office of Addiction Services and Supports as an addictions counselor at an addiction treatment center that remained operating during the pandemic to "assure proper care for [*4]the individuals receiving [substance abuse] treatment," and her March 2020 leave request was denied upon the ground that she and the agency's other employees were health care providers. Finally, petitioner Megan Rose worked for respondent Department of Corrections and Community Supervision as an offender rehabilitation coordinator at a correctional facility and, as correctional facilities provide health care to incarcerated individuals and their employees were deemed to be emergency responders by 29 CFR former 826.30 (c) (2) (i), it denied her May 2020 leave request. In other words, the record contains proof supporting the conclusion that the individual petitioners were health care providers, emergency responders or both, and there was therefore a rational basis for the determinations that they were excluded from EFMLA eligibility.
Petitioners' remaining challenges to those determinations are unpersuasive. First, although DCS' policy bulletin did advise agencies to obtain approval from the Deputy Secretary to the Governor before excluding health care providers and emergency responders under EFMLA, that bulletin was only meant to "provide[] information and implementation guidance" to state agencies regarding EFMLA and other COVID-19 related legislation and reflected DCS' "current understanding" of that legislation. Indeed, the policy bulletin made clear that its recommendations were provisional and that "[f]urther guidance" would be provided as the situation developed. The bulletin was accordingly an interpretative statement that "ha[d] no legal effect, but [was] merely explanatory and advisory," and any departure from its recommendations did not render the challenged determinations invalid (Matter of Henn v Perales, 186 AD2d 740, 741 [2d Dept 1992]; see State Administrative Procedure Act § 102 [2] [b] [iv]; Matter of Hawkes v Bennett, 155 AD2d 766, 767-768 [3d Dept 1989]).
Finally, petitioners note that the Attorney General brought suit in federal court to challenge several provisions of 29 CFR former Part 826 and that the litigation resulted in an August 2020 order that, among other things, struck down the regulatory definition of a health care provider (see State of New York v United States Dept. of Labor, 477 F Supp 3d 1, 14-15 [SD NY 2020]). Although petitioners now suggest that this "new development" had some retroactive impact on the individual petitioners' entitlement to leave under EFMLA, they failed to raise that issue before Supreme Court. Thus, it is unpreserved for our review and cannot be considered (see Matter of Bottom v Annucci, 26 NY3d 983, 985 [2015]; Matter of Rodriguez v Central Off. Review Comm., 153 AD3d 1545, 1546 [3d Dept 2017]).
Clark, Ceresia and Fisher, JJ., concur; Pritzker, J., not taking part.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Following the issuance of the appealed-from judgment, Supreme Court denied petitioners' motion for renewal and/or reargument. Petitioners did not appeal from that order and, although the record incorporates the papers from that motion, neither the papers nor the new arguments raised in them are properly before us as a result (see Boushie v Latt, 203 AD3d 1363, 1364 n [3d Dept 2022]; Georgius v Village of Morrisville, 83 AD3d 1158, 1159 [3d Dept 2011]).